STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER DOCKET
DOCKET NO. CV-2018-39

LEGAL-EASE, LLC, P.A.,                    )
                                          )
            Plaintiff                     )
                                          )
      v.                                  )
                                          )
JOAN M. EGDALL, et al.,                   )
                                          )
            Defendants                    )
                                          )
                                          )      ORDER GRANTING DEFENDANTS'
_____        )      MOTION TO DISQUALIFY
                                          )
JOAN M. EGDALL,                           )
                                          )
            Counterclaim Plaintiff        )
                                          )
      v.                                  )
                                          )
LEGAL-EASE, LLC, P.A.                     )
                                          )
            Counterclaim Defendant        )

## INTRODUCTION

Plaintiff Legal-Ease, LLC, P.A. ("Legal-Ease") has filed a Complaint alleging that Joan

Egdall ("Egdall") formed a solo law firm and diverted clients from Legal-Ease to that firm

while employed by Legal-Ease, giving rise to several causes of action against Egdall and her

firm (the "Egdall Defendants"). The Egdall Defendants deny these allegations, and Egdall has

filed a Counterclaim against Legal-Ease alleging, inter alia, that Legal-Ease owes her unpaid

wages.  Additionally, the Egdall Defendants have filed a Motion to Disqualify Legal-Ease's

attorney, Jeffrey Bennett, Esq. ("Bennett"), and that Motion is now pending before the Court.

The Court heard oral argument on the motion on October 30, 2018 in Portland, Maine. The

Egdall Defendants were represented by Thomas Douglas, Esq., and Legal-Ease was

1

represented by Jeffrey Bennett, Esq. For the reasons discussed below, the Court grants the Motion to Disqualify Bennett from representing Legal-Ease on its Complaint.

## FACTS

Bennett explained at oral argument that Legal-Ease is organized as a sole member limited liability company ("LLC").[1] Bennett is the sole member of Legal-Ease, and Bennett readily concedes he is a necessary witness on the Complaint brought by Legal-Ease. Bennett does not dispute that all of the actions attributed to Legal-Ease in the Complaint were in fact performed by Bennett. Affidavit of Joan M. Egdall, Esq., ¶ 3. At oral argument Bennett stated more than once: "I am Legal-Ease." Bennett nevertheless acknowledged that Legal-Ease does employ or contract with other attorneys, and Legal-Ease is using outside counsel to defend the Counterclaim.[2]

## STANDARD OF REVIEW

The Law Court's review of a trial court's decision "to disqualify counsel is 'highly deferential,'" and "will not [be] disturb[ed] ... 'if the record reveals any sound basis' for the trial court's decision." *Morin v. Me. Educ. Ass'n*, 2010 ME 36, ¶ 7, 993 A.2d 1097 (quoting *Estate of Markheim v. Markheim*, 2008 ME 138, ¶ 27, 957 A.2d 56, 62; *Casco N. Bank v. JBI Assocs.*, 667 A.2d 856, 859 (Me. 1995)).

---

[1] According to the pleadings, however, Legal-Ease admits to being a professional association. Egdall's Counterclaim¶ 3; Plaintiff's Reply to Defendant's Counterclaim¶ 3. Under Maine law, "professional association" is one of the terms used to denote a professional corporation. 13 M.R.S. § 736(1)(A). A professional corporation can have a professional LLC nested within it. *See* 13 M.R.S. § 741(1)(C). The Court accepts Bennett's explanation that Legal-Ease is an LLC, but whether Legal-Ease is an LLC or a professional association which contains an LLC is unimportant to the analysis, as both an LLC and a professional association are types of business entities. Moreover, Legal-Ease and the Egdall Defendants agree that the limited, material facts necessary to decide this Motion are not in dispute, and an evidentiary hearing is unnecessary.

[2] Legal-Ease is using Bennett to litigate the Complaint, but using outside counsel to defend the Counterclaim. Accordingly, the Motion to Disqualify only applies to Bennett's representation of Legal-Ease on the Complaint.

2

## ANALYSIS

Motions for disqualification are capable of being abused for tactical purposes.[3] *Morin*, 2010 ME 36, ¶ 8, 993 A.2d 1097. Accordingly, a motion to disqualify may only be granted where the moving party shows that (1) "continued representation of the nonmoving party by that party's chosen attorney results in an affirmative violation of an ethical rule" and (2) "continued representation by the attorney would result in actual prejudice to the party seeking that attorney's disqualification." *Morin*, 2010 ME 36, ¶¶ 9-10, 993 A.2d 1097. Both of these findings are satisfied in this case.

First, Defendants have established that Bennett's continued representation of Legal-Ease on the Complaint results in an affirmative violation of an ethical rule. M.R. Prof. Conduct 3.7(a), titled "Lawyer as Witness," provides as follows:

> A lawyer shall not act as advocate at a tribunal in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

M.R. Prof. Conduct 3.7(a). Legal-Ease acknowledges that Bennett is a necessary witness. As established by comparing the Complaint to the Answer, Bennett's testimony relates to contested issues and not to the nature and value of legal services rendered in the case. Finally, disqualifying Bennett would not work substantial hardship on Legal-Ease, because the company employs and contracts with other attorneys who could represent it on the Complaint, and the company is using outside counsel to defend the Counterclaim.

---

[3] The Court perceives no such abuse in this case. As attorney Bennett noted at oral argument, the issues raised by the Motion are novel on the facts presented in this case.

3

Accordingly, none of the exceptions apply, and Bennett's continued representation of Legal-Ease on the Complaint violates Rule 3.7(a).

Bennett concedes that Rule 3.7(a) prohibits him from representing Legal-Ease as its lead counsel[4] on the Complaint at trial, but argues the scope of Rule 3.7(a) is limited exclusively to trial and does not bar him from representing Legal-Ease in pretrial proceedings. In support of this proposition, Legal-Ease cites authority from other jurisdictions. However, many of the cases cited by Legal-Ease are distinguishable because the primary issue before those courts was whether the lawyer-witness's testimony was necessary, a point that Bennett concedes in this case. *See e.g. World Youth Day v. Famous Artists Merch. Exch.*, 866 F. Supp. 1297, 1302 (D. Colo. 1994); *In re Bahn*, 13 S.W.3d 865, 873 (Tex. App. 2000); *Smaland Beach Ass'n v. Genova*, 959 N.E.2d 955, 964 (Mass. 2012).

More importantly, the text of Rule 3.7(a) in the cases from other jurisdictions cited by Legal-Ease is different than the text of the rule in Maine. Those other jurisdictions use the language from Model Rule 3.7(a), which prohibits a lawyer from "act[ing] as advocate at a *trial* in which the lawyer is likely to be a necessary witness. . . ." Model Rules of Prof'l Conduct R. 3.7(a) (emphasis added). The cases cited by Legal-Ease which hold that Rule 3.7(a) only bars a lawyer-witness from providing trial testimony, emphasize use of the word "trial" in their jurisdiction's version of the rule. *See e.g. Smaland Beach Ass'n*, 959 N.E.2d at 966 (2012); *Taboas v. Fiddler, Gonzalez & Rodriquez, PSC*, 959 F. Supp. 2d 225, 226 (D.P.R. 2013).

Maine's Rule 3.7(a), however, uses the term "tribunal" rather than "trial." *Compare* Model Rules of Prof'l Conduct R. 3.7(a) *with* M.R. Prof. Conduct 3.7(a). This is a distinction

---

[4] The Court rejects the suggestion Bennett made at oral argument that he could nevertheless act as "second chair" attorney for Legal-Ease at trial.

4

which signals a substantive difference. "Tribunal" is defined under the Maine Rules of Professional Conduct as:

> [A] court, an arbitrator in a binding arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity. [A person or entity] acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular manner.

M.R. Prof. Conduct 1.0(m).[5] *See also* Black's Law Dictionary 776, 777 (4th pocket ed. 2011) (distinguishing between "tribunal" and "trial"). The difference between the Maine Rule and the Model Rule adopted by most other states is deliberate. The drafters of the Maine Rules explicitly rejected the narrow prohibition against advocacy at "trial" in favor of a broader disqualification rule. *See* M.R. Prof. Conduct 3.7 reporter's notes ("Model Rule 3.7 (2002) is substantively in accord with [the Maine Rule], but there are some distinctions . . . . Model Rule 3.7 (2002) addressed the issue of a lawyer as a witness at a trial. The Task Force recommended *the rule's scope be broadened* to address the issue of a lawyer as witness before a *tribunal*.") (citation omitted) (emphasis added). A court frequently acts in an adjudicative capacity during pretrial proceedings, deciding motions, responding to discovery disputes, and issuing orders, after the presentation of evidence or legal argument. Hence, as used in M.R. Prof. Conduct 3.7(a), "tribunal" is a broad term that applies to pretrial

---

[5] M. Bar R. 3.4(g)(1), now abrogated, which addressed when a lawyer may be called as a witness, used the term "litigation." Under the Rule Conversion Table 1, contained on the Board of Overseers of the Bar's website, former Rule 3.4(g)(1) is equivalent to current Rules 1.0(m) and 3.7, which lends further support for the Court's conclusion that the word tribunal encompasses pretrial and trial proceedings. *See Regulation: Rule Conversion Table*, Board of Overseers of the Bar (Nov. 9, 2018), http://www.mebaroverseers.org/regulation/rule_conversion_tables.html.

5

proceedings as well as the trial. The Court therefore declines to follow the trial-only rule discussed in the cases cited by Legal-Ease.

Second, Defendants have established that Bennett's continued representation of Legal-Ease would result in actual prejudice to Defendants. Comment 1 to Rule 3.7(a) states that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party . . . ." Comment 2 explains that:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

*Id.* cmt. (2). In this case, it is evident even at this early stage of the proceedings that not only *can* combining Bennett's role as advocate and witness for Legal-Ease prejudice Defendants, it *does* result in actual prejudice to Defendants.

At oral argument, Bennett said repeatedly: "I am Legal-Ease." That statement is erroneous as a matter of law and of fact. Under Maine law, "[a] limited liability company is an entity distinct from its members." 31 M.R.S. § 1504(1); *see also LaBelle v. Crepeau*, 593 A.2d 653, 655 (Me. 1991) (a corporation is a separate legal entity). Furthermore, Legal-Ease employs and contracts with other attorneys. Legal-Ease is not a one-man-show. Thus, as a matter of both law and fact, Bennett is not Legal-Ease.

Not only is the statement "I am Legal-Ease" inaccurate, it is confusing. The problematic nature of Bennett's dual role as advocate and witness was evident at oral argument. It was frequently unclear whether Bennett was reciting facts of which he has personal knowledge as a witness, or whether he was arguing facts for the purpose of

6

advocacy. Counsel for the Egdall Defendants protested that he was confused, and that the confusion would only worsen if Bennett were permitted to continue in his dual capacity to answer interrogatories, answer admissions, respond to production of documents, take depositions and be deposed, argue motions, and engage in other pretrial and trial activities. The confusion, and hence prejudice, was underscored by Bennett's repeated insistence that he was Legal-Ease. As a result, the Egdall Defendants have established actual prejudice.[6]

Legal-Ease nonetheless argues that any harm stemming from this confusion is at best general or speculative because the Egdall Defendants have not identified the specific way in which they will be prejudiced by confusion about Bennett's dual role. *See Morin*, 2010 ME 36, ¶ 10, 993 A.2d 1097 (movant's burden to identify "the specific, identifiable harm [they] will suffer in the litigation by opposing counsel's continued representation"). But the Egdall Defendants have made the necessary, specific showing. The confusion to which they object *is* the specific harm. The confusion immediately puts the Egdall Defendants at a tactical disadvantage—even at a proceeding as simple as oral argument. The Egdall Defendants can never be sure in which capacity Bennett is speaking, and have to devote time and effort to disentangling Bennett's roles. At oral argument, Bennett said his roles could be discerned, when necessary, through the Court's intervention, such as with Rule 26(g) conferences. But

---

[6] In *Morin*, the Law Court focused on prejudice to the party seeking disqualification, and did not consider prejudice to the tribunal. *Morin*, 2010 ME 36, ¶¶ 10 & 12, 993 A.2d 1097 The Law Court's focus in *Morin* on prejudice to the party seeking disqualification is logical, given the facts of *Morin*. The facts of the current case, however, implicate prejudice to the tribunal. The Comments to Rule 3.7(a) explain that the prohibition against a lawyer conflating his or her role as advocate and necessary witness is also designed to protect the tribunal, not only the party seeking disqualification. According to Comment 2, "[t]he tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness." According to Comment 3, "[t]o protect the tribunal, paragraph (a) prohibits a lawyer from simultaneously serving as advocate and necessary witness" where, as here, the exceptions do not apply. Comment 3 appears to establish a per se rule of actual prejudice to the tribunal. Even if Comment 3 stops short of establishing a per se rule as to the tribunal, in this case it was also confusing to the Court at oral argument if and when Bennett was speaking as Legal-Ease's advocate, or as a necessary witness for Legal-Ease. As with the Egdall Defendants, the confusion for the tribunal will only deepen as the case proceeds.

7

such interventions will be a distraction to the Egdall Defendants, and will cost the Egdall Defendants time, money, and effort.

The harm resulting from Bennett's continued representation of Legal-Ease is thus actual and specific, and distinguishable from the harm that the Law Court concluded was too general or speculative in *Morin*. In *Morin*, the plaintiff-employee, Joan Morin, reported to her immediate supervisor that she was experiencing a hostile and discriminatory work environment. *Morin*, 2010 ME 36, ¶ 2, 993 A.2d 1097. Morin's employer then hired a law firm to investigate her claims. *Id.* An attorney from that law firm, Edelman, investigated Morin's allegations, including conducting an interview with Morin. *Id.* ¶ 3. Edelman told Morin he was conducting an "independent investigation" and that he did not represent her employer. *Id.* Morin ultimately filed a complaint against her employer in Superior Court alleging, inter alia, a hostile and discriminatory work environment. *Id.* ¶ 5. Her employer retained the same law firm to defend against that litigation. *Id.* Morin moved to disqualify the law firm on the grounds that Edelman had misrepresented his role in the investigation and would likely be called as a witness in the litigation. *Id.* ¶ 6. Importantly for our purposes, Edelman had no role in representing Morin's employer on Morin's complaint.[7] *Id.* ¶ 5. After a testimonial hearing, the Superior Court granted Morin's disqualification motion. *Id.* ¶ 6.

The Law Court reversed, concluding that Morin's testimony—that she would have been more "guarded" during her interview with Edelman and would not have disclosed litigation and settlement strategy with him had she known his firm would be representing her employer in litigation—was insufficient as a matter of law to establish the actual

---

[7] At the oral argument, Mr. Bennett confirmed that Legal-Ease has contracts with independent attorneys as well as attorneys "on payroll." The instant motion requests only Bennett's disqualification on the basis that he is a necessary witness. Defendants have not moved for disqualification of other Legal-Ease attorneys.

prejudice necessary to support a disqualification order. *Id.* ¶ 12. The Law Court's holding in *Morin* thus turned on whether Edelman's behavior, regardless of its impropriety, had actually harmed Morin in any identifiable way. Here, Bennett is not accused of any dishonesty or impropriety giving rise to an ethical violation; it is the confusion endemic to Bennett's simultaneous dual witness-advocate capacity itself that is prejudicial. That prejudice is real, and is the kind of actual prejudice M.R. Prof. Conduct 3.7(a) is designed to prevent. As a result, Defendants have made the necessary showing of actual prejudice.

At oral argument, Bennett also explained that Legal-Ease functions as a pass-through entity for purposes of income taxation. Bennett argues that because he is the sole member of Legal-Ease and the tax implications of Legal-Ease appear on his own income tax returns, the Court should disregard the LLC form for purposes of deciding the Motion, treat Bennett as a sole proprietor, and allow Bennett to represent Legal-Ease essentially *"pro se."*[8] However, providing professional services as an LLC versus as a sole proprietor carries benefits as well as burdens. As the Law Court has explained when the choice of business entity involves a corporation,[9] "one cannot claim the benefits without the burdens." *LaBelle,* 593 A.2d at 655. The same holds true when the business entity is an LLC. Moreover, Legal-Ease is the complainant, not Bennett, and Bennett appears not to have any claims in his own name. Accordingly, the Court is unwilling to look past the LLC form and thereby circumvent Rule 3.7(a) for purposes of deciding this Motion.

---

[8] Alternatively, Bennett argues that as a business entity, Legal-Ease has a constitutional right to use the lawyer of its choice. Whatever the merits of that argument, the right is not unlimited, and is cabined by the reasonable rules of the jurisdiction.

[9] Which the Court notes can also serve as a flow-through tax entity under Subchapter S of the Internal Revenue Code.

Finally, Bennett assets that the purpose of M. R. Prof. Conduct 3.7(a) is to protect the client when the client's attorney must also serve as a necessary witness for the client. Bennett argues that because he is the sole member and owner of Legal-Ease, Legal-Ease cannot be prejudiced by his dual representation, and therefore Rule 3.7(a) does not apply. Bennett's argument finds no support in the cases or the Comments to Rule 3.7(a).

In sum, the Court concludes that the Egdall Defendants have met their burden under *Morin* because Bennett's continued representation of Legal-Ease would be an affirmative violation of M.R. Prof. Conduct 3.7(a), resulting in actual prejudice to Defendants stemming from immediate and ongoing confusion over whether Bennett is speaking as witness or advocate before the tribunal.

For all the foregoing reasons, the Defendants' motion to disqualify Bennett is granted.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.

Dated: _11-13-2018_

_____
Michael A. Duddy
Judge, Business and Consumer Docket

10